**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ABDEL FATTAH, | : | CIVIL ACTION NO. **3:CV-11-0985** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, et al., | : | |
| | : | |
| Respondents | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On May 23, 2011, Petitioner, Abdel Fattah,[1] an inmate at the State Correctional Institution at Rockview ("SCI-Rockview"), Bellefonte, Pennsylvania, filed, *pro se,* this Habeas Corpus Petition pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Petitioner attached exhibits to his habeas petition. Petitioner essentially claims that Respondent PA Board of Probation and Parole ("the Board") violated his due process rights in rescinding his parole.  Petitioner seeks to have his parole reinstated.  Petitioner filed Motion for Leave to Proceed *in forma pauperis* on June 3, 2011, which we granted on June 7, 2011.  (Docs. 4 and 6).  Also, on June 7, 2011, we issued a Show Cause Order.  (Doc. 6).  On June 3, 2011, Petitioner filed a Motion to Expedite his habeas petition with exhibits alleging that he has a severe illness necessitating  quick action on his case.[2]  (Doc. 5).

---

[1] Petitioner Fattah previously filed civil rights actions pursuant to 42 U.S.C. 1983 and 28 U.S.C. 1331 in the Middle District of PA.  *See Fattah v. Doe*, 2010 WL 5147449 (M.D. Pa.) (CV-10-1607).   Fattah also filed other action with this Court, namely, Civil No. 03-1314, 03-2169, 04-2346, and 08-MC-164.

[2] We will recommend that the Petitioner's Motion to Expedite (Doc. 5) be granted.

On June 17, 2011, Petitioner filed a lengthy 74-page Brief in Support of his habeas petition with exhibits. (Doc. 10). Respondents motioned for an Extension of Time to Answer Petitioner's habeas petition on June 24, 2011 (Doc. 13), and it was granted on June 27, 2011. (Doc. 15). Respondents subsequently filed their Answer to Petitioner's habeas petition with exhibits and support Memorandum on July 6, 2007. (Docs. 18 and 19).[3]  On July 21, 2011, Petitioner filed a Traverse to Respondents' Answer with exhibits and his Declaration. (Docs. 20 and 21). Finally, on August 1, 2011, Petitioner filed a Motion to Appoint Counsel. (Doc. 23).[4]

Petitioner is currently confined at SCI-Rockview. Petitioner is serving an aggregate sentence of total confinement of 3 years, 3 months to 11 years, 11 months for committing the crimes of Aggravated Assault, Ethnic Intimidation, Terroristic Threats, Harassment by Communication, Harassment, Simple Assault, and two counts of Aggravated Harassment by a Prisoner. (Doc. 18-1, Ex. A, ¶ 6).

Petitioner argues, *inter alia*, that his executed parole was illegally rescinded and that he was illegally detained by the Pennsylvania Board of Probation and Parole. Petitioner requests this Court to direct the Board to "reinstate his parole and/or reparole him A.S.A.P." (Doc. 1, p. 14). Petitioner claims that during the parole process, and at the time the Board granted him parole, the Board never advised him that his parole was conditioned upon his deportation from the United States to Egypt. Petitioner avers that he is an Egyptian citizen and he repeatedly avers that he was not

---

[3]Pursuant to our request, Respondent the Board sent us a hard copy of its tabbed exhibits on July 7, 2011.

[4]By separate order we denied Petitioner Fattah's Motion to Appoint Counsel. (Doc. 24).

informed by the Board that his parole was in any way related to or contingent upon his deportation.

(Doc. 21).

Specifically, Petitioner states in his Ex. A to his habeas petition, namely, a copy of his brief in support of his Petition for Allowance of Appeal with the Pennsylvania Supreme Court regarding the October 21, 2010 decision of the Pennsylvania Commonwealth Court in which it affirmed the Board's June 8, 2009 decision rescinding Petitioner's parole, as follows:

> In the instant matter the Board is apparently trying to claim that ICE's failure to deport Mr. Fattah was an adverse fact unknown to the Board at the time of his parole. The problem with this construction is that ICE's failure to deport Mr. Fattah was not a fact in existence which could have been considered by the Board in making its decision on parole had it only been known. ICE's efforts to deport Mr. Fattah commenced following his release on parole, and was only deemed a failure 10 months later when it released him to the Board's Detainer. Rescission is unavailable to the Board on these facts as <u>Rackely</u> [v. Pennsylvania Board of Probation and Parole, 881 A.2d 69 (Pa.Cmwlth. 2005)] makes it clear that the adverse fact or information must arise "prior to the inmate's release on parole."

(Doc 1, Ex. A pp. 20-21).[5]

Petitioner also stated in his brief that he advised ICE his travel documents to Egypt did not contain his correct name or birth date, and that the Egyptian Consulate erroneously issued travel documents. Petitioner further stated:

> Mr. Fattah further offered uncontroverted testimony that he continued to try to resolve the issue and had even sought and was refused travel documents to visit his dying father.
> This does not support the Board's inference that Mr. Fattah was intentionally sabotaging ICE's efforts to intentionally remove him from this country. Even if it did, it would not support a rescission of the grant of his parole as it would be a fact not in existence but unknown by the Board at the

---

[5]*See also* Doc. 18-1, Ex. J.

3

time of the grant of parole.

(Doc. 1, Ex. A, p. 26).[6]

Petitioner's habeas petition is ripe for disposition.[7]  For the reasons set forth below, we will recommend that Petitioner Fattah's habeas petition (Doc. 1) be denied.

## II. State Procedural Background.

On October 21, 2010, the Pennsylvania Commonwealth Court issued a decision affirming the June 8, 2009 Order of the Board that rescinded Petitioner's executed parole.  (Doc. 18-1, Ex. I).[8]  The Commonwealth Court stated the issue as follows:

> Abdel Fattah (Fattah) petitions for review of the Order of the Pennsylvania Board of Probation and Parole (Board) that rescinded his executed parole.  Fattah argues that the Board failed to show good cause supported by substantial evidence in the record to rescind his parole.  The Board argues that Fattah's parole was conditioned on his deportation to the Arab Republic of Egypt (Egypt) and that Fattah sabotaged efforts to deport him and lied to the Board in pre-parole interviews about his citizenship and his desire to be deported to Egypt.

(*Id.*, p. 1).

The Commonwealth Court of Pennsylvania then restated the procedural background of Petitioner's case as follows:

> Between 2001 and 2003 Fattah was sentenced for crimes he committed, including aggravated assault, terroristic threats, and ethnic intimidation, in

---

[6]*See also* Doc. 18-1, Ex. J.

[7]This case was referred to the undersigned for a Report and Recommendation.

[8]*See* Doc. 18-1, Ex. A, Att 15, for copy of the Board's decision that rescinded Petitioner's executed parole.

Philadelphia, Bucks and Cumberland counties.  On August 25, 2001, Fattah began serving an aggregated sentence of three years, three months to eleven years, eleven months, with a minimum date of November 25, 2004 and a maximum date of July 25, 2013.  After denying Fattah parole four times between 2003 and 2004, the Board again considered Fattah for parole in late 2007 and 2008.  Among the materials the Board considered was an interview with Fattah in which he stated that "he now wants to return to Egypt - says he's reached out to Egyptian Gov't trying to pave the way for return." (Parole Decision making Guidelines at 2-3, December 20, 2007, R. at 28-29.).  The Board, in its brief to this Court, also asserts that Fattah's parole was motivated, in part, by the costs of medical care incurred due to Fattah's hunger strikes.  (Board's Br. at 3.)  In an order recorded on May 13, 2008, the Board paroled Fattah to an Immigration and Customs Enforcement (ICE) detainer, stating:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act, the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: your best interests justify you being paroled/reparoled; and, the interests of the Commonwealth will not be injured.  Therefore, you are granted parole/reparole at this time.  The reasons for the Board's decision include the following:
>
> The positive recommendation made by the Department of Corrections.
>
> The existence of detainers filed against you.
>
> Parole to Immigration and Customs Enforcement [ICE] deportation order detainer.  Approved home to be available.
>
> You shall abide by the rules and regulations of the institution.

(Notice of Board Decision, May 13, 2008, R. At 37.)  Fattah was given the conditions of his parole, which he signed.  Among other things, these conditions stated:

> Upon you [sic] release from your ICE detainer, you must report IMMEDIATELY with orders to:

HARRISBURG COMMUNITY CORRECTIONS CENTER (203)
27 NORTH CAMERON STREET
HARRISBURG, PA 17101

(Conditions Governing Parole/Reparole, June 12, 2008, R. at 40.) Fattah was released to ICE on the deportation detainer; however, ICE ultimately failed to deport Fattah. The parties disagree over the reasons for this failure, and the record contains conflicting evidence as to why Fattah was not deported.

On March 23, 2009, Fattah was returned to the custody of the Commonwealth on a Board detainer. On March 25, 2009, the Board issued a Notice of Good Cause and Hearing stating that it would hold a rescission hearing. Following a hearing before a hearing examiner on April 10, 2009, at which Fattah was represented by counsel, the hearing examiner recommended that the Board not rescind Fattah's parole. Nonetheless, on June 8, 2009, the Board issued an order rescinding Fattha's parole, stating only:

> As recorded on June 8 2009 the Board of Probation and Parole rendered the following decision in your case:
>
> Rescind Board action recorded on 05/13/08 and release orders executed on 6/12/08 for release on 6/17/08, good cause established.

(Notice of Board Decision, June 8, 2009, R. at 186.) On June 29, 2009, Fattah filed a Petition for Administrative Relief with the Board. By letter dated July 28, 2009, the Board replied that it could not accept Fattah's Petition for Administrative Relief because the "Board regulations regarding administrative relief do not apply to decisions rescinding prior grants of parole." (Letter from Assistant Counsel for the Board to Fattah (July 28, 2009), R. at 190.)

Fattah v. Pennsylvania Board of Probation and Parole, No. 1513 C.D. 2009, slip op. at 2-4 (Pa. Cmwlth. Feb. 16, 2010). Fattah then appealed to this Court, which determined that, because Fattah's parole was executed, he was entitled to full due process protections. Id., slip op. at 4 (citing Gruff v. Pennsylvania Board of Probation and Parole, 986 A.2d 953, 958 (Pa. Cmwlth. 2009)). However, this Court ultimately concluded that we were unable to resolve the merits of this case because "the exact theory under which the Board rescinded Fattah's parole is not clear from its order, the record, or the Board's brief. In its brief, the Board articulates different

rationales for why it may have rescinded Fattah's parole." <u>Fattah</u>, slip op. at 5. Accordingly, we remanded this case to the Board so that it might provide "its reasons for rescinding Fattah's parole, set [] forth the evidence it relies upon, and resolve [] questions of credibility." Id., slip op. at 6. In response, the Board issued a Status Report, dated March 19, 2010, providing this Court with the information requested by our order in <u>Fattah</u>, and this case is now ready for disposition.1

> FN1 This Court's review of a decision by the Board rescinding a petitioner's executed parole "is 'limited to whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are supported by substantial evidence.'" <u>Gruff,</u> 986 A.2d at 957 n.3 [citation omitted].    Sufficient

(Doc. 18-1, Ex. I, pp. 2-4).

As stated, on October 21, 2010, the PA Commonwealth Court issued a decision affirming the Board's June 8, 2009 decision to rescind Petitioner 's executed parole. (Doc. 18-1, Ex. I).  On November 16, 2010, Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court with respect to the Commonwealth Court's decision.  (Doc. 18-1, Ex. J).  The Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal on April 27, 2011.  (Doc. 18-1, Ex. K).

Thus, Respondent Board concedes that Petitioner exhausted his state court remedies with respect to his present habeas claims raised in his May 23, 2011 habeas petition. (Doc. 18, p. 6). Petitioner claims that the Board rescinded his executed parole on June 8, 2009, without sufficient legal reasons.  Petitioner claims that the Board violated his rights by rescinding his parole after he was granted parole and placed on parole for one year.  As stated, Petitioner seeks this Court to reinstate his parole and/or reparole him immediately.

**III. Discussion.**

In his voluminous brief in support of his habeas petition, Petitioner Fattah claims that Respondents violated his procedural due process rights by failing to provide him with adequate process before rescinding his parole and, that Respondents violated his substantive due process rights by engaging in a conspiracy to purposefully grant and subsequently rescind Petitioner's parole. (Doc. 10).  We agree with Respondents and find the record shows that Respondents provided Petitioner with all of his due process rights prior to rescinding his executed parole.[9]

According to 28 U.S.C. § 2254(a), a habeas petitioner must be "in custody." Additionally, according to 28 U.S.C. § 2254(b), a petitioner must first exhaust state remedies before filing a habeas petition.  Here, Petitioner Fattah satisfies the "in custody" requirement for purposes of habeas review as he is serving a sentence due to expire at the latest on July 25, 2013. Further, as stated, Respondents do not dispute that Petitioner Fattah has exhausted all of his state remedies before he filed the present habeas petition.  (Doc. 18, p. 6).

*1. Procedural Due Process and Parole Rescission*

Petitioner's claim that Respondents violated his procedural due process rights is not supported by the record which demonstrates that Respondents provided Petitioner with due process required before rescission of parole may occur.  *See Morissey v. Brewer*, 408 U.S. 471, 481 (1972); *Johnson v. Dodrill*, No. 3:CV-04-0068 (M.D. Pa. 3-18-04).  In *Morissey*, the United States

---

[9]We do not agree with Respondents' initial contention that Petitioner failed to state a claim for federal habeas relief since we find that he claims that his due process rights were violated by the Board when it rescinded his executed parole.  (Doc. 19, p. 5).

Supreme Court determined that while parole proceedings do  not involve rights due all citizens, an inmate is entitled to "some orderly process, however informal" before rescission occurs. 408 U.S. at 481.  In *Anderson v. PA Bd. of Probation and Parole*, 2011 WL 2003291, *3 (E.D. Pa. 5-23-11), the Court stated:

> The Supreme Court has held that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Nonetheless, a parolee facing the prospect of revocation of parole is still entitled to an "informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484. The "minimum requirements of due process" in such proceedings include:
>> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board ...; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.

We now address  the process afforded to Petitioner in this case.  Here, Respondents submitted clear evidence that, in accordance with *Morissey*, Petitioner Fattah was provided with: (1) notice of the charges against him for rescission of his parole, including his rights at the rescission hearing (Doc. 18-1, Ex. A, ¶ 22, Attachment #13);  (2) a rescission hearing on April 10, 2009, with

assistance from counsel (*Id.* at  ¶ 23, Attachment # 14);[10] and (3) a written statement of the grounds for rescinding Petitioner Fattah's parole (*Id.* at ¶ 24, Attachment # 15).

Additionally, after Petitioner filed an appeal of the Board's June 8, 2009 decision to the Pennsylvania Commonwealth Court, the Court issued an Order on February 16, 2010, remanding the case to the Board and directing the Board "to make findings of fact based on the record and explain the reasons for its decision." (Doc. 18-1, Ex. E).   On March 19, 2010, the Board filed a Status Report with the Commonwealth Court stating the reasons for its rescission decision and the evidence it relied upon for its decision.  (Doc. 18-1, Ex. F).   As its Reasons for Rescission, the Board stated:

> The Board only paroled Mr. Fattah to be deported to Egypt by ICE. Mr. Fattah concedes that ICE failed to deport him to Egypt and has ceased all efforts to deport him to Egypt.  If the Board Members who voted to parole Fattah had been able to foresee that ICE's efforts to deport Mr. Fattah to Egypt would fail, for whatever reason, before they voted to parole him, they would not have voted to parole him.  Moreover, it appears from Mr. Fatah's own evidence at his rescission hearing that the failure to deport him was directly caused by his failure to cooperate, including his continuation of his long term hunger strike after ICE took custody of him, and it further appears from his own evidence at his rescission hearing that he was not truthful during his parole interview when he said that he wanted to return to Egypt and had reached out to the Egyptian government to pave the way for his return to Egypt.  On the contrary, it appears: (1) from Mr. Fatah's own evidence at his rescission hearing that he believed that he would die if he were returned to Egypt; and (2) from the Congressional Record that he improperly completed an Egyptian passport request form, filling it with gibberish and expletives.

(*Id.*, p. 1).

---

[10]Respondents submitted the entire transcript from Petitioner's rescission hearing held on April 10, 2009, Doc. 18-1, Ex. A, Att. 14.

As its Evidence Relied Upon For Rescission, the Board stated:

> The Board takes official notice of its handwritten vote sheet that shows that on May 13, 2008, Benjamin Martinez, another of the Board Members who had agreed to parole Mr. Fattah to the ICE detainer after written confirmation from ICE that they would immediately deport him if the Board paroled him, concurred in the vote of Board Member Imboden to parole him "To INS detainer/deportation only" and separately wrote "to deportation detainer."

> The Board takes official notice that the decision recorded on May 13, 2008, shows that the clerk who recorded the voting of Board Members Imboden and Martinez in that decision that said, "Parole to immigration and customs enforcement deportation order detainer," omitted from the recorded decision the critical word "only" from the voting of the two Board Members.

> At his parole rescission hearing Mr. Fattah testified that: (1) his deportation to Egypt failed because he refused to "participate in a fake document"; (2) he believed that he would die if he went to Egypt because, unlike the United States, Egypt would not care for him medically; and (3) ICE had ceased all efforts to deport him to Egypt.

> At his parole rescission hearing a statement signed by Mr. Fatah's attorney was admitted, on his own motion, as Exhibit D-1 by which he stipulated that he believed that his life would be endangered if he were returned to Egypt and that he made an issue with immigration authorities that the travel documents for returning him to Egypt were "in a name he used to obtain a German passport."

> At his parole rescission hearing a declaration signed by Mr. Fattah was admitted, on his own motion, in which eh admitted that: (1) he had used a fake passport in Germany; (2) he refused to cooperate with the deportation because of his medical condition; and (3) he believed that he would have died if he had been deported to Egypt "from the denial of medical treatment in a third world country like Egypt."

> At his parole rescission hearing Mr. Fattah had admitted into evidence, on his own motion, documents which recite that he admitted that he entered the United States illegally (on a fraudulent Portuguese passport according to the Congressional Record) and that he continued his long term hunger strike even after he was released to ICE for deportation.

> The Board takes official notice that a supervision history report on Mr. Fattah reports that he became combative and uncooperative so that he could not be put on an airplane during an attempt to deport him immediately after his release to ICE custody and thus directly caused ICE to abort the attempt.
>
> From the fact that ICE did not release Mr. Fattah when it ceased its efforts to deport him, but instead returned him to the State Correctional Institution at Camp Hill, it can be fairly inferred that ICE was fully aware that the Board only granted him parole upon condition that he be deported to Egypt.

(*Id.*, pp. 2-3).

Subsequently, both Petitioner (through counsel)  and the Board filed supplemental briefs with the Court.  (*Id.*, Exs. G and H).

On October 21, 2010, the Commonwealth Court issued a Memorandum and Order and affirmed the decision of the Board to rescind Petitioner's executed parole.  (Doc. 18-1, Ex. I).  The Court stated, in pertinent part, as follows:

> [T]he board has based its decision to rescind Fatah's parole not only on its understanding that Fattah was to be deported immediately following his parole, but also on the grounds that Fattah made misrepresentations about his desire to be deported and that the Board was not aware of other material information, such as the fact that Fattah had previously used at least one false passport, which hampered ICE's attempts to deport Fattah.

(*Id.*, p. 6).

Additionally, the record shows that on May 13, 2008, the Board issued a decision granting Petitioner parole to ICE's deportation order detainer.  (Doc. 18-1, Ex. A, ¶ 16 and Att. 8).  Further, on June 17, 2008, Petitioner was released on parole to ICE's deportation order detainer.  (Doc. 18-1, Ex. A, ¶ 17 and Att. 9).  As the Commonwealth Court found, "it is clear from this Order [May 13, 2008 Board decision] alone that the Board's intent in paroling [Petitioner] was that he be

available for deportation." (Doc. 18-1, Ex. I, p. 7).

Board Agent Lisa Peters testified at Petitioner's rescission hearing and stated:

Q.      Now are you referring to an order dated May 14, 2008, with an asterisk notation regarding parole to Immigration  - - - .

A.      [Agent Peters] Correct.  Because that is the first page of the release orders, when  he [Petitioner] signed his released orders.  This was the first page  - - - this whole packet was given to him as a packet.  So he had this first page also saying that this parole to Immigration and Customs  - - - .

Q.      Was the paper handed to him or was the paper explained to him?

A.      The paper was explained to him word by word by myself on that date.

Q.      What date was that?

A.      That would have been 6/12/08.

Q.      And this asterisk, this has parole to Immigration and Customs Enforcement, deportation order detainer.

A.      Correct.

Q.      Where does that  - - - where does it indicate on this page that as a condition of his parole that he must agree to be deported or that he must be deported.

A.      Well, it was a deportation order detainer.  So the deportation order was the order that he must be deported.

Q.      Was that told to him?

A.      Yes, that was told to him.

Q.      By whom?

A.      By myself and the counselors that were sitting there.

13

> Q.     The who that was sitting there?
>
> A.     There was a counselor also sitting there.  I do not recall her name.
>
> Q.     Counselor?
>
> A.     His counselor.
>
> Q.     His counselor.  But there's nothing in this wording here that says he must be removed.
>
> A.     It doesn't say must be removed, but it says deportation order.

(Doc. 18-1, Ex. A, Att. 14, pp. 9-10).

Agent Peters also stated:

> Q.     What is your knowledge as to the reason why Mr. Fattah was not deported?
>
> A.     [Agent Peters] The only knowledge that I have was that first the travel visa expired.  Then they received a new travel visa.  Then from paperwork that I read that he was  - - - they chartered a plane and that Egypt would not [ ] him land  - - - they would not let the plane land in Egypt.  That could not provide proof after that that Mr. Fattah was a resident of Egypt.  I know that  - - - I read that they tried to deport him to Germany, but Germany did not want him either.  So he was returned to the DOC custody after all attempts failed.
>
> Q.     So from what you said  - - - none of what you had just said indicates any active part on Mr. Fattah that prohibited his removal.  So why would it be considered a violation of his role  - - -?
>
> A.     Because he could not prove that he was a resident of the other country.
>
> Q.     So the fact that he couldn't prove that he was a resident of Egypt meant that he was in violation?
>
> A.     Because he could not be deported.

> Q.      Okay.  But where does it say on the documents you provided to
> him that that was a condition of his parole, that if he violated  - - - ?
>
> A.      That was **the only condition of his parole was to be deported**.

(Doc. 18-1, Ex. A, Att. 14, pp. 14-15) (Emphasis added).

Furthermore, as the Commonwealth Court pointed out in its October 21, 2010 Memorandum (Doc. 18-1, Ex. I, p. 8), Petitioner submitted his Declaration dated April 9, 2009, and it was included with the April 10, 2009 Rescission Hearing transcript (Doc. 18-1, Ex. A, Att. 14, R. 113).  Petitioner averred as followed:

> 4.      On 6-17-08 ICE staff attempted to deport me with false name, false
> birth date and false address etc;
>
> 5.      ICE was able to get/obtain a travel document from the embassy
> office in NY City based on fake passport copy that I used in Germany
> about (20) years ago.
>
> 6.      In Egypt if any Egyptian used false information to benefit from it
> in any way, under the Egyptian law this is a serious crime and people
> who do this go to the jail for a long time.
>
> 7.      Even though that ICE is the one who obtain the travel document
> does not change the fact that I am the one who responsible for the
> document under the Egyptian law because I didn't refuse to accept to take
> any part of it.

(*Id*.). (*See also* Doc. 18-1, Ex. I, p. 8).

The Commonwealth Court then stated:

> That Fattah had previously used false information on a passport was
> a fact of which the Board asserts it was unaware when it granted Fattah
> parole.  There is no evidence in the record to suggest that the Board was
> aware that Fattah had previously used a fraudulent passport or that he
> would be unable to be deported due, in part, to this fraud.  Thus, the
> record supports the conclusion that the Board was unaware of a material
> fact which would have affected its decision to parole Fattah and,

15

therefore, rescission of Fattah's parole is warranted.

(Doc. 18-1, Ex. I, p. 8).

In *Anderson*, the Court stated that pursuant to 28 U.S.C. §2254(e), "this court must presumptively defer to the Board's implicit factual determinations that [Board Agent] was a credible witness and that [she] had not falsified documents submitted to the Board, absent clear evidence to the contrary." 2011 WL 2003291, *4(citation omitted).   Moreover, as in *Anderson*, we find that Petitioner Fattah "has failed to present clear and convincing evidence contradicting the Board's factual determinations," and that Petitioner "has not demonstrated that the Board's decision was based on an unreasonable determination of the facts in light of the evidence present in the [April 10, 2009] Parole Hearing as required by §2254(d)(2)." *Id*.

According to the record, we agree with Respondents (Doc. 19, pp. 6-7) and find that Respondent Board adhered to the standard of due process for rescission of parole required by *Morrissey* by providing Petitioner with notice of the charges against him, an opportunity to be heard, and disclosure of the evidence used as grounds for its decision rescinding his executed parole. *See Anderson, supra*.

   2. *Substantive Due Process and Parole Rescission*

Regarding Petitioner's claim that Respondents' rescission of his executed parole violated his substantive due process rights, Petitioner's habeas petition fails because the liberty interest at stake in parole is not a substantive right afforded all citizens.  *See Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979); *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996).  In *Greenholtz*, the United States Supreme Court held in relevant part:

> "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.  The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined.  But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.E.2d 451 (1976).

*Id.*

"Thus, absent the creation of a liberty interest in parole, a state's decision to deny parole does not create any procedural due process protections.  Both the federal and Pennsylvania state courts have held that parole is not a constitutional protected liberty interest under Pennsylvania law."  *Galarza v. PA Bd. of Probation and Parole*, 2009 WL 1505290, *2 (M.D. Pa. 5-27-09)(citations omitted).

In addition to claiming that his procedural due process rights were violated by Respondents, Petitioner Fattah also claims that his substantiative due process rights were violated since the Board's June 8, 2009 decision to rescind his executed parole was arbitrary and not supported by evidence, and that it was based on erroneous information and impermissible factors such as retaliation for exercising his right not to eat and discrimination against "Arab Muslims."  (Doc. 20).

The Court in *Galarza v. PA Bd. of Probation and Parole*, 2009 WL 1505290, *2, stated:

> "Even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter,* 631 F.2d 233, 236 (3d Cir.1980). "Although a person may have no 'right' to a valuable government benefit, and may be denied it for any number of reasons, 'there are some reasons upon which the government may not rely.' " *Burkett,* 89 F.3d at 139 (citing *Perry v. Sindermann,* 408 U.S. 593, 597 (1972)). Under substantive due process, a state may not deny

17

parole on constitutionally impermissible grounds, such as race or in
retaliation for exercising constitutional rights (two factors that are not
alleged and are not present here). *Id.* at 140. In addition, a state may not
base a parole decision on factors bearing no rational relationship to the
interests of the Commonwealth. *Block,* 631 F.2d at 237.

The United States Court of Appeals for the Third Circuit has stressed,
however, that a substantive due process claim based upon alleged
arbitrary and capricious action is not easily mounted because the relevant
level of arbitrariness required involves not merely action that is
unreasonable, but rather, something more egregious, at times
"conscience shocking." *Hunterson v. DiSabato,* 308 F.3d 236, 246-47
(3d Cir.2002). "[F]ederal courts are not authorized by the due process
clause to second-guess parole boards and the requirements of substantive
due process are met if there is some basis for the challenged decision."
*Coady v. Vaughn,* 251 F.3d 480, 487 (3d Cir.2001).

The record in our case shows that the reasons provided by the Board to rescind Petitioner's

executed parole were permissible factors.  As detailed above, the record clearly shows the Board

intended that deportation of Petitioner to Egypt was the **only** condition of his parole, that he was

aware of this condition, and that ICE's inability to deport him was due, in large part, to Petitioner's

conduct regarding false information he previously used to obtain travel documents.  We find no

credible evidence to support Petitioner's contention that the Board had animus feelings and/or

hate towards him, and that the Board's decision was based, in part, on its belief that Petitioner 's

refusal to eat cost the taxpayers over $250,000 and caused the prison staff a lot of work.  (Doc.

20, pp. 15-16).  Further, we find no credible evidence of discrimination by the Board against

Petitioner based on his nationality and religion.   In short, we do not find that any factor which the

record shows was relied upon by the Board to rescind Petitioner's executed parole was

"conscience shocking."

**IV. Recommendation.**

Based on the foregoing, it is respectfully recommend that Petitioner Fattah's Habeas Petition (**Doc. 1**) be denied.  It is also recommended that Petitioner's Motion to Expedite his case (**Doc. 5**) be granted.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 22, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDEL FATTAH, | : | CIVIL ACTION NO. **3:CV-11-0985** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, et al., | : | |
| | : | |
| Respondents | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 22, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen (14)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
                              _____
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: August 22, 2011**