IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDEL FATTAH, | |
| Petitioner, | CIVIL ACTION NO. 3:11-985 |
| v. | |
| PENNSYLVANIA BOARD of PROBATION & PAROLE, et al., | (JUDGE CAPUTO) <br> (MAGISTRATE JUDGE BLEWITT) |
| Respondents. | |

## **MEMORANDUM**

Presently before the Court is the Report and Recommendation ("R & R") of Magistrate Judge Blewitt (Doc. 25) to Petitioner Abdel Fattah's Petition for Writ of Habeas Corpus. Magistrate Judge Blewitt recommends that the Petition for Writ of Habeas Corpus (Doc. 1) be denied because Respondents adequately complied with Petitioner's due process rights when Petitioner's executed parole was rescinded. Petitioner filed timely objections to the R & R. Because Petitioner's due process rights were not violated when Respondents rescinded Petitioner's executed parole, the Court will adopt the Magistrate Judge's recommendations and deny the Petition for Writ of Habeas Corpus.

## **I. BACKGROUND**

As set forth in Magistrate Judge Blewitt's Report and Recommendation (Doc. 25), Petitioner Abdel Fattah is an inmate at the State Correctional Institute at Rockview ("SCI-Rockview), Bellefonte, Pennsylvania. (Doc. 25.) Petitioner is proceeding in this habeas corpus action *pro se* pursuant to 28 U.S.C. § 2254. (Doc. 1.) Petitioner is currently confined at SCI-Rockview for various crimes with a maximum original sentence date set to expire on July 25, 2013. (Doc. 19.)

In 2003, 2005, and 2007, the Pennsylvania Board of Probation and Parole ("the Board") reviewed Petitioner for parole, but parole was denied each time. (Doc. 19.) In December of 2007, however, Petitioner informed the Board that he wished to return to Egypt and that he had reached out to the Egyptian Government to secure his return. (Doc.

19.) As such, on January 8, 2008, the Board informed Petitioner that a parole determination hinged on verification of Petitioner's Egyptian citizenship. (Doc. 18, Ex. A, Att. 6.) After the United States Immigration and Customs Enforcement ("ICE") confirmed Petitioner's Egyptian citizenship, the Board, on May 13, 2008, issued a decision granting Petitioner's parole to ICE for deportation. (Doc. 18, Ex. A, Att. 8.)

ICE's attempts to deport Petitioner were unsuccessful due, in large part, to Petitioner sabotaging the deportation efforts. (Doc. 18, Ex. A, Att. 10.) As a result, on March 4, 2009, the Board lodged its warrant against Petitioner for his return to SCI-Camp Hill. (Doc. 18, Ex. A, Att. 11.) ICE released its warrant against Petitioner and returned him to SCI-Camp Hill on March 23, 2009. (Doc. 18, Ex. A., Att. 12.)

Petitioner was provided with notice of the charges for rescission of his parole on March 25, 2009. (Doc. 18, Ex. A, Att. 13.) And, on April 10, 2009, Petitioner was provided with a rescission hearing at which he was represented by counsel. (Doc. 18, Ex. A, Att. 14.) On June 9, 2009, the Board issued an order rescinding Petitioner's parole, and, ultimately, on October 21, 2010, the Pennsylvania Commonwealth Court affirmed the Board's decision to rescind Petitioner's parole. (Doc. 18, Ex. I.) Petitioner next filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court with respect to the Commonwealth Court's decision to affirm the Board's rescission of his parole. (Doc. 18, Ex. J.) The Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal on April 27, 2011. (Doc. 18, Ex. K.)

As Plaintiff exhausted his available state court remedies, Petitioner commenced the present habeas action on May 23, 2011. (Doc. 1.) Petitioner asserts that the Board violated his due process rights by rescinding his parole. (Doc. 1.)

On August 22, 2011, Magistrate Judge Blewitt issued a R & R recommending Petitioner's Petition for Writ of Habeas Corpus be denied. (Doc. 25.) According to Magistrate Judge Blewitt, Petitioner's procedural due process rights were not violated when the Board rescinded his parole. (Doc. 25.) The Magistrate Judge also concluded that Petitioner was not denied any substantive due process rights when his parole was

rescinded. (Doc. 25.) Petitioner objects to the Magistrate Judge's recommendations and asserts that Magistrate Judge Blewitt failed to properly consider the minimum due process requirements for rescinding a parolee's parole set forth by the Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. E. 2d 484 (1972). According to Petitioner, rescission of his parole violated his procedural due process rights under *Morrissey* in the following respects: (a) he was denied the opportunity to confront and cross-examine adverse witnesses; (b) he was denied a written statement by the factfinder setting forth the reasons for rescinding his parole; (c) he was denied disclosure of the evidence against him; and (d) he was denied a hearing before a neutral and detached hearing body. (Doc. 28.) As Petitioner's objections are not supported by the documents of record, the Court will adopt the Magistrate Judge's recommendation to deny Petitioner's habeas corpus petition.

## II. Discussion

**A.    Legal Standards**

    **1.    Legal Standard in Reviewing a Report and Recommendation**

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(c)). However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984) (emphasis added). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F.Supp. 736, 738 (M.D.Pa.1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F.Supp. 328, 330 (M.D.Pa.1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);

Goney, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F.Supp. 375, 376–77 (M.D.Pa.1998). Therefore, the Court reviews the portions of the Report and Recommendation to which the Plaintiff objects *de novo*. The remainder of the Report and Recommendation is reviewed for clear error.

### 2. Habeas Petitions Pursuant to 28 U.S.C. § 2254

According to 28 U.S.C. § 2254(a), a United States district court shall entertain an application for a writ of habeas corpus when the petitioner is in custody pursuant to a state court judgment "only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court shall entertain the habeas petition, however, only if the applicant has exhausted his state court remedies prior to filing the federal habeas petition. *See* 28 U.S.C. § 2254(b). Here, as noted by Magistrate Judge Blewitt, Petitioner is in custody and exhausted his state court remedies prior to commencing the present habeas action. (Doc. 25.) As such, the Court will address Petitioner's claims that the rescission of his executed parole violated his procedural and substantive due process rights. (Doc. 28.)

### B. Due Process

#### 1. Procedural Due Process

Petitioner's claim that his procedural due process rights were violated by Respondents prior to the rescission of his parole is not supported by the facts of record. The Fourteenth Amendment of the United States Constitution provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. It is well established that the rescission of parole implicates procedural due process concerns. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. E. 2d 484 (1972). According to the Supreme Court, before a parolee's parole is rescinded:

> minimum requirements of due process [must be provided]. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds

4

> good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id*. at 489.  Here, Petitioner acknowledges that he was provided with: (a) notice of the charges against him; (b) a rescission hearing with the assistance of counsel; and (c) the opportunity to be heard and to present witnesses and documentary evidence.  (Doc. 28.) Petitioner, however, asserts that he was denied the other procedural protections required by *Morrissey*.  These objections are addressed in turn.

### a. The Right to Confront and Cross-Examine Adverse Witnesses

Petitioner contends that he was not presented the opportunity to confront and cross-examine adverse witnesses at his rescission hearing. (Doc. 28.)  Petitioner's objection appears to be that although he was provided with the opportunity to confront a Board Agent, Lisa Peters, he was not provided with the opportunity to cross-examine Board members voting to rescind his parole. (Doc. 28.)  Thus, Plaintiff contends that *Morrissey's* mandate guaranteeing a parolee the opportunity to confront and cross-examine adverse witnesses was violated. (Doc. 28.)

Here, Petitioner provides no support for his position that he was entitled to confront and cross-examine Parole and Probation Board members prior to the rescission of his parole.  Moreover, as Agent Peters was the only adverse witness to testify and Petitioner's counsel actually examined Agent Peters (Doc. 18, Ex. A, Att. 14), Petitioner's first objection is without merit.

### b. Written Statement by Factfinders

Petitioner's second objection, that he was not afforded a statement in writing explaining the grounds for the rescission of his parole, is contradicted by the documents of record. (Doc. 28.)  Indeed, as set forth in Magistrate Judge Blewitt's R & R, the Board submitted a Status Report with the Commonwealth Court of Pennsylvania stating the reasons for rescinding Petitioner's parole as follows:

> The Board only paroled Mr. Fattah to be deported to Egypt by ICE.  Mr. Fattah concedes that ICE failed to deport him to Egypt and has ceased all

> efforts to deport him to Egypt. If the Board Members who voted to parole Fattah had been able to foresee that ICE's efforts to deport Mr. Fattah to Egypt would fail, for whatever reason, before they voted to parole him, they would not have voted to parole him. Moreover, it appears from Mr. Fatah's own evidence at his rescission hearing that the failure to deport him was directly caused by his failure to cooperate, including his continuation of his long term hunger strike after ICE took custody of him, and it further appears from his own evidence at his rescission hearing that he was not truthful during his parole interview when he said that he wanted to return to Egypt and had reached out to the Egyptian government to pave the way for his return to Egypt. On the contrary, it appears: (1) from Mr. Fatah's own evidence at his rescission hearing that he believed that he would die if he were returned to Egypt; and (2) from the Congressional Record that he improperly completed an Egyptian passport request form, filling it with gibberish and expletives.

(Doc. 18, Ex. F.) And, as to the evidence relied upon for rescinding Petitioner's parole, the Board stated:

> The Board takes official notice of its handwritten vote sheet that shows that on May 13, 2008, Benjamin Martinez, another of the Board Members who had agreed to parole Mr. Fattah to the ICE detainer after written confirmation from ICE that they would immediately deport him if the Board paroled him, concurred in the vote of Board Member Imboden to parole him 'To INS detainer/deportation only' and separately wrote 'to deportation detainer.' The Board takes official notice that the decision recorded on May 13, 2008, shows that the clerk who recorded the voting of Board Members Imboden and Martinez in that decision that said, 'Parole to immigration and customs enforcement deportation order detainer,' omitted from the recorded decision the critical word 'only' from the voting of the two Board Members. At his parole rescission hearing Mr. Fattah testified that: (1) his deportation to Egypt failed because he refused to 'participate in a fake document'; (2) he believed that he would die if he went to Egypt because, unlike the United States, Egypt would not care for him medically; and (3) ICE had ceased all efforts to deport him to Egypt. At his parole rescission hearing a statement signed by Mr. Fatah's attorney was admitted, on his own motion, as Exhibit D-1 by which he stipulated that he believed that his life would be endangered if he were returned to Egypt and that he made an issue with immigration authorities that the travel documents for returning him to Egypt were 'in a name he used to obtain a German passport.' At his parole rescission hearing a declaration signed by Mr. Fattah was admitted, on his own motion, in which he admitted that: (1) he had used a fake passport in Germany; (2) he refused to cooperate with the deportation because of his medical condition; and (3) he believed that he would have died if he had been deported to Egypt 'from the denial of medical treatment in a third world country like Egypt.' At his parole rescission hearing Mr. Fattah had admitted into evidence, on his own motion, documents which recite that he admitted that he entered the United States illegally (on a fraudulent Portuguese passport according to the Congressional Record) and that he continued his long term hunger strike even after he was released to ICE for deportation. The Board takes official notice that a supervision history report on Mr. Fattah reports that he became combative and uncooperative so that he could not be put on an airplane during an attempt to deport him immediately after his release to ICE custody and thus

> directly caused ICE to abort the attempt. From the fact that ICE did not release Mr. Fattah when it ceased its efforts to deport him, but instead returned him to the State Correctional Institution at Camp Hill, it can be fairly inferred that ICE was fully aware that the Board only granted him parole upon condition that he be deported to Egypt.

(Doc. 18, Ex. F.)

As the Status Report was sent to Petitioner's Counsel (Doc. 18, Ex. F), the Board satisfied *Morrissey* by providing Petitioner with the evidence relied upon and the reasons for rescinding Petitioner's parole. *See Morrissey*, 408 U.S. at 489. Petitioner's second objection is without merit.

### c. Disclosure of Evidence

Petitioner also asserts that he was not informed of the evidence against him prior to the Board's rescission of his executed parole. (Doc. 28.) However, the basis for rescinding Petitioner's parole was premised on the inability of ICE to have Petitioner deported- a fact well within Petitioner's knowledge. Moreover, the Notice of Good Cause and Hearing, which Petitioner admits to having received (Doc. 28), specifically states that "multiple attempts by Immigration and Customs Enforcement to have the inmate deported failed. As a result, inmate was returned to SCI-Camp Hill on 3/23/09." (Doc. 18, Ex. A, Att. 13). Respondents therefore properly disclosed to Petitioner that the evidence to be used at the parole rescission hearing related to the failed attempts to deport Petitioner to Egypt.

### d. Neutral and Detached Hearing Body

Lastly, Petitioner asserts that he was denied his procedural due process rights because his hearing did not occur before a "neutral and detached hearing body." (Doc. 28.) According to *Morrissey*, a "neutral and detached hearing body" includes traditional parole boards. *See Morrissey*, 408 U.S. at 489. And, members of parole boards are "impartial professional[s] serving essentially 'as an arm of the sentencing judge.'" *Cleavinger v. Saxner*, 474 U.S. 193, 204, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985) (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1302 n.15 (9th Cir. 1981)). Furthermore, a "hearing officer [is] a 'neutral and detached' person within the parameters of *Morrissey*."

*Peterson v. Sullivan*, No. 07-6070, 2009 WL 47158, at *7 (D. N.J. Jan. 6, 2009) (quoting *Morrissey*, 408 U.S. at 489).

Here, Petitioner's Rescission Hearing occurred before a Hearing Examiner, Douglas Campbell. (Doc. 18, Ex. A, Att. 14.) And, Petitioner's parole was rescinded pursuant to a good cause finding made by the Board of Probation and Parole. (Doc. 18, Ex. A, Att. 15.) Thus, Petitioner was afforded the requirements of a "neutral and detached" hearing body as required by *Morrissey*. *See Morrissey*, 408 U.S. at 489. Petitioner's objection to the contrary is without merit.

2. **Substantive Due Process**

Petitioner also claims the Magistrate Judge erred in concluding that Petitioner's habeas petition fails to identify the denial of a substantive due process right. (Doc. 28.) According to the Supreme Court:

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: '[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.'

*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (quoting *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)). And, under Pennsylvania law, "both [f]ederal and Pennsylvania state courts have held that parole is not a constitutionally protected liberty interest. . . . " *Smith v. Shannon*, No. 1:09-CV-1126, 2010 WL 2038571, at *2 (M.D. Pa. May 19, 2010) (citing *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir.1996); *Rogers v. Pennsylvania Bd. of Prob. & Parole*, 555 Pa. 285, 724 A.2d 319, 323 (Pa.1999)).

While Pennsylvania courts have held that parole is not a constitutionally protected liberty interest, "a state may not deny parole on constitutionally impermissible grounds, such as race or in retaliation for exercising constitutional rights." *Smith*, 2010 WL 2038571, at *2 (citing *Burkett v. Love*, 89 F.3d at 140). However, "federal courts are not authorized by the due process clause to second-guess parole boards and the

8

requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 f.3d 480, 487 (3d Cir. 2001). Thus, the relevant level of arbitrariness for a court to find a substantive due process violation requires "not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferen[t].'" *Hunterson v. DiSabato*, 308 F.3d 236, 247 (3d Cir. 2002).

Here, Petitioner fails to set forth sufficient evidence to demonstrate that the Board's decision to rescind his executed parole was unreasonable, let alone "conscience shocking." *Hunterson*, 308 F.3d at 247. While Petitioner makes broad allegations that the Board's decision was motivated by impermissible bias, the record does not support Petitioner's theory. In particular, the relevant documents establish that Petitioner's parole was conditioned on his deportation. (Doc. 18, Ex. A, Atts. 6; 8; 12.) When it became clear that deportation of Petitioner was not possible, the Board rescinded his parole. (Doc. 18, Ex. A, Att. 14.)[1] Under these circumstances, the Board's decision to rescind Petitioner's parole does not rise to the level of "conscience shocking" in violation of Petitioner's substantive due process rights.

### III. Conclusion

For the above stated reasons, the Court will adopt the Report and Recommendation

---

[1] The rescission of Petitioner's parole is similar to facts in *Smith v. Shannon*. See 2010 WL 2038571. In *Smith*, the petitioner received a favorable parole determination conditioned on the petitioner being admitted to a dual diagnosis treatment program. *See id.* at *1. After the petitioner was rejected from multiple treatment programs, the Board rescinded his parole because "the Board's condition that Smith be paroled to a center with such a treatment plan could not be satisfied." *See id.* at *3. As a result, Judge Conner rejected the petitioner's substantive due process argument and concluded that it could not "be reasonably disputed that there was 'some basis' for the decision to rescind parole" or that "any factor relied upon by the Board could be described as 'conscience shocking.'" *Id*. The rescission of Petitioner's parole here presents a similar scenario- once it became apparent that a condition of Petitioner's parole could not be satisfied, the Board reasonably responded by rescinding his parole.

(Doc. 25) of Magistrate Judge Blewitt in its entirety. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) will be denied.

An appropriate order follows.

| | |
|---|---|
| <u>March 26, 2012</u><br>Date | <u>/s/ A. Richard Caputo</u><br>A. Richard Caputo<br>United States District Judge |